UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSIER F. JEUNES, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NATIONAL RURAL LETTER CARRIERS' ASSOCIATION, | : | Civil No. 3:09CV280(PCD) |
| | : | |
|     Defendant. | : | |

## RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, National Rural Letter Carriers' Association, moves pursuant to Rule 56(c) of the Federal Rules of Civil Procedure for summary judgment. For the reasons stated herein, Defendant's motion for summary judgment [Doc. No. 28] is **granted**.

**I.   BACKGROUND**

Plaintiff Josier F. Jeunes brings this hybrid action pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and the fair representation doctrine implied in the National Labor Relations Act against Defendant National Rural Letter Carriers' Association ("NRLCA"). Plaintiff alleges a violation of the union's obligation to provide fair representation to its members following violations of a collective bargaining agreement.

Plaintiff was employed by the United States Postal Service ("USPS") as a rural letter carrier from May 10, 1999 until his termination on December 28, 2007. (Def.'s Local Rule 56(a)(1) Stmt. ¶ 1.) During his employ, he was part of a bargaining unit of approximately 115,000 postal service employees represented by the NRLCA, the exclusive bargaining representative for rural carriers employed by the USPS. (Id. ¶ 2.) The terms and conditions of employment for rural

carriers are covered by a national collective bargaining agreement ("CBA") between the USPS and the NRLCA. (Id. ¶ 3.)  Article 16, section 1 of this agreement provides: "no employee may be disciplined or discharged except for just cause. . . . Any such discipline or discharge shall be subject to the grievance-arbitration procedure provided for in this Agreement . . . ." (Anderson Decl. ¶ 4.)

Article 15 of the CBA outlines a four step grievance and arbitration procedure. (Anderson Decl. ¶ 4.)  Steps one through three of the grievance procedure afford the USPS and the Union an opportunity to mutually resolve the grievance. (Id.)  In step one, the grievance is argued to the local management at the postal facility involved.  In step two, the grievance is argued to district officials within the state.  These two steps are handled by local and state Union stewards.  In step three, the grievance is argued to a regional postal management representative by one of three national specialists employed by the NRLCA or by one of the four NRLCA executive committee members. (Id.)  Every grievance challenging the discharge of a rural letter carrier, regardless of merit, is appealed at least through step three. (Id. ¶ 5.)

The fourth step of the procedure is final and binding arbitration. (Id.)  Upon receipt of a step three denial, an appeal to arbitration is filed by the NRLCA President, in order to afford ample time for a thorough review of the grievance files.  However, not all discharge grievances denied at step three are pursued through arbitration.  The NRLCA has discretion to decide which cases to arbitrate. (Id.)  The NRLCA pursues only grievances with a "reasonable likelihood of success" through arbitration.  After a step three denial, Randy Anderson, NRLCA director of labor relations, along with NRLCA general counsel, reviews and analyzes the file and case in order to determine whether the grievance should be withdrawn from arbitration or scheduled for

arbitration. (Id. ¶ 6.) If Mr. Anderson and counsel believe that a grievance should be withdraw from arbitration, the grievant is notified and afforded twenty-one days to submit additional information or argument on his behalf. (Id.) Whether or not the grievant submits further information, Mr. Anderson and the general counsel's office review the file for a second time at the close of this time period. If their original impression of no reasonable likelihood of success is affirmed, the grievance is withdrawn from arbitration. (Id.)

On October 26, 2007, while employed at the New Fairfield Connecticut USPS branch, Plaintiff had a verbal altercation with a co-worker on the work room floor. As a result, Plaintiff was placed on an off-duty status without pay on that date and terminated effective December 27, 2007. Plaintiff and Defendant dispute what exactly occurred on October 26, 2007. The USPS notice of removal informing Plaintiff of his termination states that several witnesses heard Plaintiff making vulgar and threatening remarks to a coworker and challenging him to a fight. Plaintiff's co-worker informed him of a package awaiting delivery on his route. The notice of removal alleges that Plaintiff responded to his co-worker with statements such as: "why you fucking bothering me?" "what's your fucking problem," "fucking asshole," fucking pussy," and "bring it on pussy." (Def.'s Br. Summ. J. 4.) Plaintiff admits to making some of these comments but denies others. At least two other USPS employees who witnessed the incident signed statements confirming that Plaintiff used this language and threatened violence. (Def.'s Ex. I.) The USPS has a zero tolerance policy on violence, which states: "each and every act or threat of violence from this day forward will elicit an immediate and firm response that could, depending on the severity of the incident, include removal from the Postal Service."

Prior to this incident, Plaintiff had been disciplined four times by the USPS. The USPS

has previously sought Plaintiff's removal for failure to disclose a criminal arrest on his employment application.  In addition, in 2006, Plaintiff was suspended for seven days for poor attendance.  In 2007, he was suspended for fourteen days for failure to follow instruction.  In 2008, he was suspended for seven days for failure to be regular in attendance, unsatisfactory work performance and failure to follow instructions. (Def.'s 56(a)(1) Stmt. ¶¶ 10-12.)  Plaintiff also has a criminal record for assault and was arrested in 2005 in connection with a domestic altercation. (Id. ¶ 13.)

Plaintiff filed a grievance protesting his October 2007 off duty placement and November 2007 removal.  He refused, however, to attend counseling through the employee assistance program, stating that the program "is for crazy people." (Id.)  Defendant represented Plaintiff in his grievances through step three. (Id. ¶ 15.)  However, after review by Mr. Anderson and general counsel, Defendant concluded that Plaintiff had no reasonable likelihood of success at arbitration.  On July 31, 2008, Mr. Anderson wrote Plaintiff informing him of Defendant's initial decision and his right to provide additional information. (Id. ¶ 19.)  Plaintiff provided no further information, but Mr. Anderson and the general counsel's office reviewed Plaintiff's file again after the twenty-one day period.  Both offices reached the same conclusion and Plaintiff's grievance was withdraw on August 25, 2008. (Id. ¶ 24.)

Plaintiff alleges that the Defendant was "deficient in representing Mr. Jeunes in his earlier disciplinary matters" and unfairly represented him in the 2007-2008 proceedings.  Plaintiff submits that the union's conduct was "arbitrary, discriminatory, and in bad faith." (Pl.'s Br. Opp. Summ. J. 3.)  However, as will be discussed below, Plaintiff does not provide factual support for this contention.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  However, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & H.R. Co. v. Conrail, 902 F.2d 174, 178 (2d Cir. 1990).  The moving party bears the burden of establishing that summary judgment is appropriate. Anderson, 477 U.S. at 225.  "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial.  It need only point to an absence of proof on the plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).

In determining whether a genuine issue has been raised, all ambiguities are resolved and all reasonable inferences are drawn against the moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980).  Determinations of the weight to accord evidence or assessments of the credibility of

witnesses are improper on a motion for summary judgment as such are within the sole province of the jury. Hayes v. New York City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996). "If reasonable minds could differ as to the import of the evidence . . . and if . . . there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal citations omitted); see also Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000) ("When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury.").

### III.  DISCUSSION

In a hybrid section 301/duty of fair representation claim, the plaintiff can choose to name both the employer and the union as defendants, or only one of the two. "Regardless of who is named a defendant, however, the plaintiff cannot succeed unless he makes three showings. First, the plaintiff must prove that the employer in fact breached the CBA. Second, the plaintiff must show that the union breached its duty of fair representation. Finally, the plaintiff must show that there is a causal connection between the union's wrongful conduct and any injuries that she suffered." Smith v. Cont'l AFA, 562 F. Supp. 2d 283, 290 (D. Conn. 2008) (citing White v. White Rose Food, 237 F.3d 174, 178 (2d Cir. 2002); Spellacy v. Airline Pilots Ass'n Intl., 156 F.3d 120, 126 (2d Cir. 1998)).

Here, Plaintiff is wholly unable to show the second element and therefore the Court need only address this issue. "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or

6

in bad faith." Vaca v. Sipes, 386 U.S. 171, 190 (U.S. 1967); Spellacy, 156 F.3d at 126. "Judicial review of union action, however, 'must be highly deferential, recognizing the wide latitude that [unions] need for the effective performance of their bargaining responsibilities.'" Id. (quoting Gvozdenovic v. United Air Lines, Inc., 933 F.2d 1100, 1106 (2d Cir. 1991)). A court will find a union's actions arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, as to be irrational." Air Line Pilots Ass'n v. O'Neill, 499 U.S. 65, 67 (U.S. 1991) (citations omitted).

Plaintiff's brief in opposition to summary judgment contains conclusory allegations that Defendant's decision not to pursue arbitration was made in bad faith and was discriminatory. However, the record does not provide any evidence to support these allegations. In fact, the record reflects a reasoned, good faith decision on the part of Defendant and a Plaintiff unhappy with the outcome of his grievance but without a legal claim. It is clear that Plaintiff does not have an absolute right to arbitration either under the CBA or federal law. See Vaca, 386 U.S. at 191.

Throughout the grievance process, Plaintiff was represented by Nate Gillotti. Plaintiff admits that he was satisfied by Mr. Gillotti's handling of his grievance from steps one through three. (Jeunes Dep. 57, July 28, 2009.) Plaintiff's only complaint regarding his representation is that "they didn't take the case to arbitration." (Id. at 61.) Plaintiff offers no examples of discriminatory conduct or even negligent representation by his Union. Instead he states, "I just didn't like the outcome." (Id. at 69.) When asked what Defendant could have done differently to fairly represent him, Plaintiff vaguely responded that the Union should have "fought better in these [prior] grievances I would have - - I wouldn't be fired right now." (Id. at 129.)

Furthermore, the record reflects Defendant's thorough and competent representation of

Plaintiff's claim. Defendant took witness statements, filed the appropriate grievance forms and wrote letters on behalf of Plaintiff. (Def.'s Ex. I.) Defendant followed its usual procedures before deciding to withdraw Plaintiff's grievance from arbitration. NRLCA Director of Labor Relations Anderson and NRLCA General Counsel Gan each reviewed all material relating to Plaintiff's case. (Gan Decl. ¶ 9.) Based on the documentation, both offices made the reasonable determination that because of Plaintiff's hostile and threatening behavior during the incident at issue, history of discipline, refusal to engage in counseling, criminal record and the zero tolerance policy, Plaintiff's grievance had "no reasonable likelihood of success in arbitration." (Gan Decl. ¶¶ 10-12; Anderson Decl. ¶ 7.) Following this determination, Plaintiff was afforded the opportunity to provide the Union with additional information or arguments. Although Plaintiff did not provide any additional information, the file was still given a fresh and second look by both Mr. Anderson and attorney Jean Marc Favreau from the general counsel's office. (Gan Decl.¶ 13; Favreau Decl. ¶9; Anderson Decl. ¶ 8.) This fresh look did not result in a different conclusion and Mr. Gan recommended that the case be withdraw from arbitration. (Id.) Even taking this evidence in the light most favorable to Plaintiff, there is nothing in the record from which a reasonable jury could conclude that Defendant acted arbitrarily, in bad faith or with discriminatory motives. There is no question of fact for a jury to decide.

### IV.    CONCLUSION

For the reasons stated herein, Defendant's motion for summary judgment [Doc. No. 28] is **granted**.

SO ORDERED.

Dated at New Haven, Connecticut, July  2 , 2010.

/s/
Peter C. Dorsey, U.S.D.J.